IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| INCARNACION L. SPEAKS,<br><br>Plaintiff,<br><br>vs.<br><br>MAZDA MOTOR CORPORATION,<br>MAZDA MOTOR OF AMERICA, INC.,<br>d/b/a MAZDA NORTH AMERICAN<br>OPERATIONS,<br><br>Defendants. | CV 14–25–M–DLC<br><br><br>ORDER<br><br><br>**FILED**<br><br>AUG 0 7 2015<br><br>Clerk, U.S District Court<br>District Of Montana<br>Missoula |

Before the Court are several motions in this diversity jurisdiction action.

For the reasons explained, the Court denies Defendants' motion for summary

judgment, and motions to exclude experts Syson and Hoffman, and grants in part

and denies in part Plaintiff's motion for partial summary judgment.

## Background

Plaintiff Incarnacion Speaks ("Speaks") brings this action, now sounding

solely in strict products liability, against Defendants Mazda Motor Corporation

and Mazda Motor of America, Inc. ("Mazda") for injuries she sustained in a motor

vehicle accident that she alleges were caused by the defective design of the

automatic seatbelt in the 1994 Mazda Protegé she was riding in at the time of the

-1-

accident. The accident occurred on January 29, 2011. Speaks was the front seat passenger in the Protegé and her husband Kevin Speaks was driving. A Pontiac driven by Charla Greensweight attempted an improper turn and collided with the Speaks' vehicle, striking the Protegé nearly head-on. Speaks suffered serious injuries in the accident, including abdominal injuries and lacerations to her pancreas and duodenum. Speaks was approximately 4'9" tall and weighed 110 pounds at the time of the collision. Speaks maintains that she was properly wearing both the lap and automatic shoulder belt at the time of the collision. Speaks alleges that the Protegé's passive restraint system is defective in that it fails to properly restrain people, such as Speaks, who are of small stature.

Mazda has moved to exclude Speaks' design defect expert, Stephen Syson, and Speaks' causation expert, Michelle Hoffman, on the grounds that the opinions and testimony of the experts are unreliable and insufficient under *Daubert* and Rule 702 of the Federal Rules of Evidence. Mazda tiers these motions to its motion for summary judgment in which it asserts that Speaks lacks the necessary expert testimony and evidence to support her claims. Mazda also moves for summary judgment on the ground that Speaks' claims are preempted under *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000).

Speaks moves for summary judgment on several of Mazda's affirmative

defenses. Mazda has agreed to withdraw some of its affirmative defenses, but maintains that several of its affirmative defenses are proper. The Court will address each of the affirmative defenses in more detail below.

## I.      Mazda's Motions to Exclude Experts

### Applicable Legal Standards

Motions in limine are procedural devices to obtain an early and preliminary ruling on the admissibility of evidence. *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. 2010). A motion in limine should not be used to resolve factual disputes or weigh evidence. *Id.* Evidence shall be excluded in limine only when it is shown that the evidence is "inadmissible on all potential grounds." *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* "This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* Rulings on motions in limine are provisional and "the trial judge may always change his mind during the course of trial." *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000).

The admissibility of expert testimony is governed by Federal Rule of

Evidence 702.  Under Rule 702, a witness who is "qualified as an expert by

knowledge, skill, experience, training, or education" may offer expert opinion

testimony if the expert's expertise will "help the trier of fact to understand the

evidence," the testimony is "based upon sufficient facts or data," is "the product of

reliable principles and methods," and the expert "has applied the principles and

methods reliably to the facts of the case." Fed.R.Evid. 702.  In essence, the

proffering party must demonstrate that its expert is qualified to testify about the

subject of his opinion and that the opinion is relevant and reliable.  *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).  "Rule 702 should

be applied with a 'liberal thrust' favoring admission."  *Messick v. Novartis*

*Pharmaceuticals Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014)(quoting *Daubert*,

509 U.S. at 588).

A trial court is obligated to act as a "gatekeeper" regarding the admissibility

of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145

(1999); *Daubert*, 509 U.S. 579 (1993).  In exercising its gatekeeping function, the

trial court must ensure the relevance and reliability of the proffered testimony.  *Id.*

In testing reliability, the court must "make certain that an expert . . . employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.  The focus of the

*Daubert* test is on "the soundness of [the expert's] methodology." *Primiano v.*

*Cook*, 598 F.3d 558, 564 (9th Cir. 2010). The Supreme Court has provided lower

courts with a non-exhaustive and "flexible" list of factors that a court may

consider when assessing reliability: (1) whether a theory or technique can be

tested; (2) whether it has been subjected to peer review and publication; (3) the

known or potential error rate of the theory or technique; and (4) whether the theory

or technique enjoys general acceptance within the relevant scientific community.

*Daubert*, 509 U.S. at 592-94; *Messick*, 747 F.3d at 1197.

 In testing reliability, the trial court must avoid excluding opinions "merely

because they are impeachable," as the basic objective is simply to "screen the jury

from unreliable nonsense opinions." *Alaska Rent-A-Car, Inc. v. Avis Budget*

*Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). The court is "a gatekeeper, not a

fact finder." *Primiano v. Cook*, 598 F.3d at 565(quoting *United States v.*

*Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)). "Shaky but admissible

evidence is to be attacked by cross examination, contrary evidence, and attention

to the burden of proof, not exclusion." *Id.* (quoting *Primiano v. Cook*, 598 F.3d

558, 564 (9th Cir. 2010)).

## Discussion

### 1.    Stephen Syson

Mazda attacks the reliability of Syson's opinions.  Mazda contends that Syson's opinions—generally concluding that the restraint system is defectively designed because it results in excessive occupant torso loading in frontal collisions—are unreliable because they are rooted in irrelevant studies.[1]

Mazda criticizes Syson for relying on:  (1) studies in which the occupant was wearing only the shoulder belt, as opposed to both the shoulder belt and the lap belt, like Speaks was doing at the time of the accident; (2) studies that concluded that the restraint system may cause spinal and neck or liver and chest injuries, but not pancreatic and duodenal injuries, like Speaks sustained; (3) studies that focused on testing the restraint system's effectiveness for restraining drivers, when Speaks was not a driver, but a passenger; and (4) studies in which the crashes and forces involved were more severe than in the subject crash.  The Court concludes, however, that Syson's partial reliance on these tests—ones that don't precisely equate with the subject collision—does not compel the conclusion

---

[1] Defendants do not attack Syson's qualifications as an expert.  Syson's expert report and curriculum vita make clear that he is sufficiently qualified to offer opinions in the area of automotive design, and specifically automotive restraint system design. Also, Defendants rightly do not contest the relevance of the testimony since Syson opines about the restraint system's design in this design defect case.

that Syson's opinions are so unreliable as to require exclusion of his testimony altogether.

Mazda's criticism of Syson's reliance on tests involving occupants wearing only the shoulder belt is undercut by their own expert's admission that for vehicles using automatic belting designs "occupant kinematics [are similar] whether the manual lap belt is in use or not." (Doc. 98 at 40, citing Rebuttal Expert Report of Mike Klima.)  If the forces involved are similar whether an occupant is wearing the lap belt or not, Syson appears justified in relying on studies where the occupant was not wearing the lap belt, even though Speaks was wearing the lap belt.  Mazda's other criticisms are similarly unimpressive.  They clearly amount to impeachment evidence appropriately raised during cross-examination rather than grounds for exclusion under Rule 702.  For instance, Mazda points out that none of the testing Syson relies on specifically demonstrates or discusses pancreatic and/or duodenal injuries.  But Mazda admits that at least some of the testing and/or scientific literature Syson relied on shows that the automatic belting design can cause torso and/or abdominal injuries—the same area of the body where the duodenum and pancreas are located.  Mazda's criticism of Syson's reliance on testing focused on drivers, as opposed to passengers, and crashes that are more severe than the subject crash are similarly flawed.  These criticisms do not

-7-

constitute reasons for excluding the testimony, but instead serve as grist for a vigorous cross-examination. Moreover, though the testing Syson relied on does not exactly replicate the subject collision, this is not fatal to the admissibility of Syson's opinions since, "peer reviewed scientific literature [on a specific topic] may be unavailable because the issue may be too particular, new, or of insufficiently broad interest to be in the literature." *Primiano*, 598 F.3d 558, 565 (9th Cir. 2010). Ultimately, absent any evidence that Syson's methodology is inconsistent with that employed by other expert's in the field, or is otherwise based on invalid science, Mazda merely attacks the weight of the proffered testimony. Mazda thus fails to demonstrate that Syson's opinions must be excluded as unreliable or irrelevant.

Mazda also seeks exclusion of Syson's opinions as untrustworthy because Syson did not personally perform any testing. Syson instead relied on other peer-reviewed studies and literature as support for his opinions. Admissibility of expert testimony does not depend on the expert personally performing testing, Fed.R.Evid. 702, and the Court will not impose this requirement on Syson.

Mazda also asserts that Syson's opinions are deduced from data not properly produced with his expert report. This is essentially the same argument that the Court has already dealt with in two prior Orders. (See Docs. 80, 112.) As

the Court held in its prior Order on this topic, Syson may rely on peer-reviewed literature that was cited in his report, even if that literature was not produced with the report.  Mazda concedes that Syson cited to specific National Highway Traffic Safety Administration (NHTSA) tests in his expert report.  Thus, to the extent that Mazda's motion is premised on a failure to produce publically available testing or literature, like the NHTSA testing and other publically available documents, the argument fails.  To the extent that Mazda seeks to preclude Syson from relying on insufficiently disclosed materials at the time of trial, that objection has been amply preserved.

Mazda also criticizes each of Syson's conclusions individually.  In general, Mazda attempts to require that each conclusion be read in a vacuum, without reference to the rest of the report.  The Court declines to take this bait.  Syson's report must be read in its entirety in order to assess the reliability and admissibility of the opinions under Rule 702.

In reading the entirety of the report, Syson's opinions are based on his background in testing restraint system designs, his background in studying how automobile design more generally affects driver and occupant safety, a body of literature that ostensibly supports Syson's opinions, and a variety of "test data" that ostensibly supports his opinions.  While the expert report can be criticized for

being generalized, and for lacking precise or easy-to-follow citation practice, the Court does not have before it all of the underlying materials referenced in the report, or a precise understanding of how Syson's background, experience, and review of the literature and test data informs his opinions. It is clear that his background and experience as well as a body of literature and "test data," inform and support his opinions. Though not precisely cited, and though certainly impeachable through skillful cross-examination, none of his conclusions appear to rest on mere "cushions of air," as Mazda argues, that would require exclusion in limine. *Navarro v. Fuji Heavy Indus., Ltd.*, 925 F.Supp. 1323, 1328 (N.D. Ill. 1996).

Mazda's motion to exclude the opinions and testimony of Syson is denied.

## 2.      Michelle Hoffman

Mazda seeks exclusion of all testimony and opinions of Ms. Hoffman, a biomechanical engineer who purports to provide expert testimony about how Speaks sustained her injuries. Mazda contends that Hoffman's opinions are inadmissible under Rule 702 and *General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997), because they are not based on sufficient facts or data and are not the product of reliable principles and methods. Mazda also asserts that Hoffman is not qualified to offer any design defect opinions and moves to exclude any opinion

testimony that goes beyond her expertise.

At the center of Mazda's critique about the reliability of Hoffman's causation opinions is the argument that Hoffman erroneously relies on the testimony of Speaks to support her opinion that at the time of the collision the shoulder belt was properly applied across and over Speaks' shoulder. Relying primarily on its own experts' opinions, Mazda contends that it is impossible that the shoulder belt was properly routed over Speaks' shoulder at the time of the collision, and that Hoffman's contrary opinion is therefore scientifically invalid. Though, unsurprisingly, the parties' experts disagree about how Speaks' injuries were caused, the Court concludes that Mazda fails to demonstrate that Hoffman's opinions are so unreliable as to be inadmissible under Rule 702.

Hoffman's causation opinions are based on her experience and training as a biomechanical engineer, and her review of a variety of materials, including accident reports, deposition transcripts, photographs of the subject vehicle, information about the vehicles involved in the crash, Speaks' medical records, site photographs, an inspection of the subject vehicle, a study of how the seatbelt in the subject vehicle was likely positioned on Speaks' body at the time of the collision, and a review and analysis of relevant literature. Based on Speaks' deposition testimony, the deposition testimony of the responding paramedic, and a

-11-

variety of references in Speaks' medical records, Hoffman opines that Speaks' was wearing her shoulder belt properly applied over her shoulder at the time of the collision. While this approach may be subject to impeachment during cross-examination, it does not strike the Court as being a violation of the scientific method and Mazda offers nothing to show that a biomechanical engineer is constrained, by some inviolable standard, from relying, in part, on the testimony of a person involved in a crash to establish certain facts about it. In fact, the only person who knows with certainty whether the shoulder belt was properly placed is Speaks. The physical evidence may call into question her veracity on this subject, but that does not preclude Hoffman from relying on Speaks' sworn testimony in forming her opinions.

As evidenced by Mazda's contrary theory of causation, there are certainly other explanations for how Speaks sustained her injuries in the collision, but this unremarkable circumstance does not make Hoffman's theory inadmissible; it simply creates a factual dispute for the jury to sort out. Nor does the alleged error in Hoffman's report regarding Hoffman's interpretation of the medical records make all of her opinions and testimony so unreliable as to be inadmissible.

Based on literature and testing that demonstrates high torso loading in automatic belting restraint systems, Speaks' and others' testimony about the

shoulder belt routing, Speaks' body type, and the direction and severity of the forces involved in the collision, among other factors, Hoffman concluded that the properly applied shoulder belt caused Speaks' abdominal injuries. Hoffman's opinion is not airtight, but it is based on sufficient facts and data and sufficiently reliable analysis to be admissible under Rule 702. Indeed, outside of the experts' disagreement regarding the routing of the shoulder belt, Hoffman's opinion is entirely consistent with that of Mazda's experts.

*Joiner* does not mandate a different result. In this case, unlike in *Joiner*, the causation expert is not tasked with determining to a reasonable degree of medical science something as elusive as whether alleged low-level exposure to a particular chemical "promoted" the development of a person's lung cancer. *Joiner*, 522 U.S. at 139-140. The causation experts here, biomechanical engineers, are attempting to explain what forces in a car collision of a generally agreed upon severity caused Speaks' abdominal injuries. We are not in the same ballpark as linking alleged, low-level chemical exposure to a cancer diagnosis. Furthermore, whereas the experts in *Joiner* could site to no literature supporting their causation theory, *id.* at 144-146, here Hoffman relies on literature and testing that indicates that (1) occupants of vehicles with automatic 2-point belt systems sustain high torso loads and (2) that these loads increase with passengers whose seats are forward of the

mid-position.  Both of these circumstances arguably existed in the subject

collision.  Mazda's motion to exclude Hoffman's causation opinions is denied.

Mazda also moves to preclude Hoffman from offering any testimony or

opinions suggesting that the subject vehicle had a design defect.  In her deposition,

Hoffman conceded that a biomechanic lacks the necessary expertise to offer

design defect opinions.  She also admitted that she had never designed, or

participated in the design of, any vehicular component.  She has, however,

apparently "done studies about seat belts."  (Doc. 92-4 at 28.)

In her report, Hoffman offers several opinions which can be construed as

identifying a defect in the subject vehicle's restraint system.  It is not clear, based

on Speaks' brief in opposition to exclude Hoffman, if Speaks intends to elicit

design defect opinions from Hoffman at trial.  While perhaps some of Hoffman's

testimony can be expected to touch on the loading forces expected in the restraint

system in the subject vehicle, any testimony from Hoffman that goes beyond this,

to the point where Hoffman is attempting to offer design defect opinions, appears

unlikely to be admissible under Rule 702.  If such testimony is offered, counsel

will be required to lay appropriate foundation.  Because ruling on this issue will

require better context, the Court reserves ruling on the issue until trial.

## II.      Summary Judgment Motions

### Summary Judgment Standard

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).  Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.  In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252.

### A.      Mazda's motion for summary judgment

In this diversity action, the Court applies Montana substantive law and federal procedural law. *Erie R.Co. v. Tomkins*, 304 U.S. 64, 79 (1938).  However, "[f]ederal law preempts state law if the state law 'actually conflicts' with federal law." *Hubbard v. SoBreck, LLC*, 554 F.3d 742, 744 (9th Cir.2009).

Mazda contends that Speaks' design defect claim is "merely a cleverly disguised criticism of the passive nature of the design" and is therefore preempted under *Geier*. (Doc. 97 at 20.) Speaks counters that her claim is not based on Mazda's decision, in the abstract, to utilize an automatic seatbelt passive restraint system, but instead faults Mazda for the execution of that decision in the manner of design. The Court agrees that Speaks' claim is more nuanced than Mazda contends, and therefore denies Mazda's motion for summary judgment based on preemption.

In *Geier*, the United States Supreme Court held that a state common-law tort action alleging that a vehicle manufacturer had a duty to equip a 1987 automobile with airbags was preempted as a result of an actual conflict with federal law, specifically, the 1984 version of a Federal Motor Vehicle Safety Standard, FMVSS 208, which required auto manufacturers to equip some, but not all, of their 1987 vehicles with passive restraint systems. *Geier*, 529 U.S. 861, 874. The Department of Transportation promulgated FMVSS 208 in an effort to increase the use of restraint systems in automobiles by requiring a gradual phase-in of equipping newly manufactured automobiles with passive restraint systems. Due to consumer backlash against the various forms of passive restraint systems in existence in 1984, FMVSS 208 allowed manufacturers "to choose among different

-16-

passive restraint mechanisms, such as airbags, automatic belts, or other passive restraint technologies to satisfy [the] requirement." *Id.* at 878. The DOT specifically rejected a proposed "all airbag" requirement, in favor of allowing compliance with the standard through a mix of passive restraint technologies. *Id.* at 879. The plaintiffs' claim in *Geier*, however, "depend[ed] upon its claim that manufacturers had a duty to install an airbag when they manufactured the [subject] 1987 Honda Accord." *Id.* at 881. The Supreme Court held that the plaintiff's suit thus "presented an obstacle to the variety and mix of devices that the federal regulation sought" because it would have "required all manufacturers to have installed airbags" *Id.*

Contrary to Mazda's assertion, Speaks' claim does not depend on either obligating Mazda to have installed an airbag, as opposed to some other form of passive restraint system, or on declaring that every automatic seatbelt design is inherently defective. In fact, Speaks presents evidence that other safer and technologically feasible alternative designs for passive belting systems were available and should have been used.

Mazda spends a fair portion of its brief citing to conflicting expert testimony about whether a safer alternative design is possible. None of this argument persuades the Court that Mazda is entitled to summary judgment on the

ground that the claim is preempted— quite the opposite. The conflicting expert testimony only demonstrates that whether a safer design of passive belting is possible is ultimately a fact question to be appropriately determined by a jury.

Essentially, Mazda attempts to rebrand Speaks' suit by submitting expert testimony which, taken at face value, calls into question the validity of some of the opinions of Speaks' experts. While Speaks' expert opines that the Protegé's belting design supplies inadequate lap belt restraint, Mazda's experts opine that minimal lap belt restraint is inherent in all automatic shoulder belt designs. This conflicting testimony only highlights the factual disputes involved in the case. Mazda's attempt to rebrand Speaks' claim by presenting conflicting expert testimony does not entitle Mazda to summary judgment on the basis of preemption under *Geier*. The success of Speaks' suit does not depend on the jury finding that every passive belting system is inherently defective; it depends only on the jury finding that Mazda's particular design of the passive belting system was defective. Notably, Mazda is unable to point to anything in FMVSS 208 which required Mazda to design its automatic belting system in the precise manner that it chose. Accordingly, Mazda's motion for summary judgment on preemption grounds is therefore denied.

Mazda's alternative grounds for summary judgment is premised on the

exclusion of either Syson or Hoffman, or both. Because, as explained above, neither Syson nor Hoffman are subject to exclusion, Mazda's alternative ground for summary judgment—lack of sufficient evidence—is without merit. Mazda's motion for summary judgment based on sufficiency of evidence is accordingly denied.

**B.     Speaks' Motion for Partial Summary Judgment**

Speaks moves for summary judgment on several of Mazda's affirmative defenses. As noted above, Mazda has agreed to withdraw some of its affirmative defenses, namely, its fifth affirmative defense of assumption of risk, its sixth and tenth affirmative defenses relating to punitive damages, and, in part, its third affirmative defense of contributory negligence. Mazda maintains that all of the other contested affirmative defenses are proper. The Court will address each contested affirmative defense in turn.

**Law Applicable to Affirmative Defenses**

Black's Law Dictionary defines an affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Black's Law Dictionary* 482 (Bryan A. Garner ed., 9th ed. 2009). A defendant bears the burden of proving an affirmative defense. *Id.*

"The only defenses available in Montana strict liability actions are statutory." *Chapman v. Mazda Motor of America, Inc.*, 7 F.Supp.2d 1123, 1127 (D.Mont. 1998). The available defenses for defendants in strict products liability cases "are limited . . . as provided in § 27–1–719." *Hart-Albin Co. v. McLees*, 870 P.2d 51, 53 (Mont. 1994).

Montana Code Annotated § 27–1–719(5) provides, in relevant part, that a defendant in a strict products liability case:

> [M]ay assert the following affirmative defenses . . . :
>     (a) The user or consumer of the product discovered the defect or the defect was open and obvious and the user or consumer unreasonably made use of the product and was injured by it.
>     (b) The product was unreasonably misused by the user or consumer and the misuse caused or contributed to the injury.

Part (a) of § 27–1–719(5) is generally held to allow the assumption of the risk defense. *See Lutz v. National Crane Corp.*, 884 P.2d 455, 461 (Mont. 1994). This part is inapplicable here as Mazda has voluntarily withdrawn its assumption of the risk defense.

## 1.    Unreasonable Misuse

Mazda's fourth affirmative defense asserts unreasonable misuse. It is Mazda's only asserted affirmative defense that is statutorily authorized under

Montana Code Annotated 27-1-719(5).

Mazda contends that at the time of the collision Speaks was wearing her shoulder belt routed under her armpit, and that this constitutes unreasonable misuse. Speaks, citing specific warnings against under-the-arm shoulder belt use in the Protegé's owner's manual, contends that under-the-arm shoulder belt use was reasonably foreseeable to Mazda and thus not unreasonable misuse under Montana law. The Court agrees with Speaks.

"[I]f it is reasonably foreseeable to a defendant that its product can be or is being used in a specific manner, and a consumer is injured by using the product in that manner, the defendant cannot argue that the plaintiff had misused its product." *Kenser v. Premium Nail Concepts, Inc.*, 338 P.3d 37, 43 (Mont. 2014). "[T]he defense of misuse refers to use not foreseen by the manufacturer of the product." *Hart-Albin Co. v. McLees*, 870 P.2d 51, 53 (Mont. 1994). "[E]vidence of foreseeability can be found in the warnings that [a manufacturer] included" with its product. *Dunn v. Ancra Intern, LLC*, 2011 WL 4478478, *3 (D.Mont. 2011).

Here, it is abundantly clear that Speaks' alleged "misuse" of the restraint system by routing the shoulder belt under her arm was foreseeable to Mazda. In fact, Mazda actually foresaw it. In the owner's manual for the subject Protegé, Mazda specifically warned against routing the shoulder belt under the arm.

Accordingly, Mazda's strenuous argument that it did not, or could not, foresee that Speaks might route the shoulder belt under her arm fails. *Dunn*, 2011 WL 4478478, *3. Speaks is entitled to summary judgment on Mazda's fourth affirmative defense of misuse.

### 2.    Contributory Negligence

Mazda has voluntarily withdrawn its third affirmative defense of contributory negligence, but only to the extent that it relates to the conduct of third parties. Mazda maintains that its third affirmative defense is proper to the extent that it allows Mazda to contest the element of causation by presenting evidence that Speaks was wearing the automatic shoulder belt under her arm at the time of the accident.

Montana statute provides that "contributory negligence is not a defense" for defendants in strict products liability cases. Mont. Code Ann. § 27-1-719(5); *accord Lutz v. Nat. Crane Corp.*, 884 P.2d 455, 463 (Mont. 1994). As such, Speaks is entitled to summary judgment on Mazda's third affirmative defense of contributory negligence. Contributory negligence is not a valid defense in this strict products liability case, whether it is asserted against third parties or Speaks herself. Mazda may not argue or contend that Speaks was negligent for routing the seatbelt under her arm. Mazda may not argue or contend that Speaks'

-22-

negligence contributed to her injuries.  Any attempt to do so would violate clear Montana law.  *Id.*

This ruling, however, does not preclude Mazda from contesting Speaks' design defect claim on the element of causation.  If, among other things, the jury is instructed that routing the shoulder belt under the arm is neither misuse nor negligence, and any evidence of under-the-arm routing is admitted only for the limited purpose of allowing Mazda to contest the element of causation, such evidence may be admitted to the extent that Speaks' theory for design defect is based on the improper fit of the seatbelt on people of small stature, even when properly worn.  *See Bell v. Glock, Inc.*, 92 F.Supp.2d 1067, 1071 (D.Mont. 2000). Evidence that Speaks was wearing the shoulder belt under her arm would tend to disprove Speaks' claim that it was the poor fit of the restraint system that caused her injuries.  Therefore, the Court's ruling must be viewed in the proper context. In granting Speaks' motion for summary judgment on Mazda's affirmative defense of contributory negligence, the Court is not deciding that Mazda is precluded entirely from contesting the element of causation with evidence of under-the-arm belt routing.  It is deciding only that Mazda may not argue or suggest that Speaks' conduct was negligent or that her negligence caused her injuries.  The ultimate admissibility of evidence related to under-the-arm belt routing will depend on how

Speaks presents her design defect claim.

### 3.   Compliance with regulations and standards

Citing *Malcolm v. Evenflo Company*, 217 P.3d 514, 521-522 (Mont. 2009),
Speaks contends that it is entitled to summary judgment on Mazda's eleventh
affirmative defense—that the subject Protegé was manufactured in compliance
with all applicable statutes, regulations, requirements and standards.  Mazda
recognizes that *Malcolm* prohibits introduction of evidence of compliance with
governmental standards in defense of a strict products liability case, but contends
that it should be allowed to introduce evidence of the applicable federal regulatory
background pertaining to passive restraint systems at the time of the Protegé's
manufacture.  Mazda contends that such evidence is necessary to provide the jury
with "the proper context and framework to evaluate the passive seatbelt design."
(Doc. 100 at 26.)

Under Montana law, a manufacturer's compliance with product safety
regulations is irrelevant and inadmissible on the question of the product's
defectiveness, because allowing the admission of such evidence "would inject into
strict products liability analysis the manufacturer's reasonableness and level of
care—concepts that are fundamental to negligence law, but irrelevant on the issue
of design defect liability." *Malcolm*, 217 P.3d 514, 522.  As has been consistently

-24-

reiterated by the Montana Supreme Court, "the focus in design defect cases shines on the condition of the product, rather than the manufacturer's conduct or knowledge." *Id.* at 521 (internal quotation marks and citations omitted.) Thus, because compliance with regulations and standards would not serve to defeat Speaks' claim, i.e., it would not constitute a valid affirmative defense, nor is compliance even relevant to the jury's analysis of defectiveness, Speaks is entitled to summary judgment on Mazda's eleventh affirmative defense based on compliance with all applicable standards and regulations. Mazda will not be allowed to introduce evidence of its compliance with federal regulations, even under the guise of attempting to provide the "proper context" for assessing its passive restraint system.

### 4.    State-of-the-Art Defense

Citing *Sternhagen v. Dow*, 935 P.2d 1139, 1147 (Mont. 1997), Speaks moves for summary judgment on Mazda's twelfth affirmative defense that the subject vehicle conformed to the state of the art with respect to similar products at the time it was sold. Mazda maintains that the defense is proper to the extent that it allows Mazda to rebut Syson's opinion that technologically feasible and practical alternative automatic belting designs existed before the Mazda Protegé was designed and manufactured. Once again, Mazda swims against the tide of

settled Montana law, and thus tries to turn Speaks' motion for summary judgment on an affirmative defense into an evidentiary motion.

In *Sternhagen*, the Montana Supreme Court held, "we expressly reject the state-of-the-art defense, as this defense is contrary to the doctrine of strict products liability." *Id.* at 1142.  The Court concluded that "state-of-the-art evidence is used to establish whether the manufacturer knew or through the exercise of reasonable human foresight should have known of the dangers inherent in his product." *Id.* at 1144.  It held that such evidence is inadmissible because it "raises issues of reasonableness and foreseeability," which, if allowed, would "sever Montana's strict products liability law from the core principles for which it was adopted." *Id.*

*Sternhagen* also specifically addressed, distinguished, and clarified the import of certain language in previous Montana Supreme Court cases that perhaps suggested that the state-of-the-art defense had been adopted in Montana.  *Id.* at 1144-1147 (*discussing Rost v. C.F.& I. Steel Corp.*, 616 P.2d 383 (Mont. 1980), *Kupier v. Goodyear Tire & Rubber Co.*, 673 P.2d 1208 (Mont. 1983), *Rix v. General Motors Corp.*, 723 P.2d 195 (Mont 1986), *Tacke v. Vermeer Mfg. Co.*, 713 P.2d 527 (Mont. 1986), and *Krueger v. General Motors Corp.*, 783 P.2d 1340 (Mont. 1989)).  In discussing these prior case, *Sternhagen* endorsed limiting the admissibility of evidence concerning alternative designs "to situations where those

-26-

designs existed at the time of manufacture. " *Id.* at 1146.  The Court rejected the

argument that because a plaintiff may put on evidence of existing alternative

designs, the defendant should also be allowed to do so.  *Id.*  Significantly, the

Court clarified that although in prior cases it had allowed plaintiffs to put on

evidence of existing alternative designs, it "did not require it as part of the

plaintiff's prima facie case." *Id.*

Montana law is clear that Mazda's state-of-the-art defense is not a proper

affirmative defense.  Mazda is imputed with knowledge of its product's

undiscovered and undiscoverable dangers.  *Id.* at 1143.  The fact that its product

conformed with the state of the art is both irrelevant and inadmissible.

This does not mean that no evidence about alternative designs will be

admissible at trial.  To the extent that Speaks attempts to prove a defect by

presenting evidence that safer and technologically feasible designs were available

at the time of the Protegé's manufacture, Mazda may attempt to rebut this.  *See id.*

at 1146 (citing *Rix*, 723 P.2d at 201; *Krueger*, 783 P.2d at 1345).  While Mazda's

rebuttal evidence in such a situation will necessarily be limited by the above

ruling, Mazda would nevertheless be entitled to rebut opinion testimony that a

proffered alternative design is safer, or that a proffered alternative design was

actually feasible or available at the time of the subject vehicle's manufacture.[2]

The admission of such rebuttal evidence would not violate Montana law regarding

the state-of-the-art defense because this evidence does not go to whether Mazda

knew or could have known of the dangers of its own product.  Instead, such

evidence merely sheds light on whether a proffered alternative design is, in fact,

safer, and/or whether an expert's opinion that a safer alternative design was

available at the time of manufacture is accurate.  Ultimately, the exclusion of state-

of-the-art evidence, and the effect of this Court's ruling on Mazda's state-of-the-

art affirmative defense, is primarily concerned with prohibiting Mazda from

presenting evidence suggesting that it had no way of knowing of the dangers

presented by its shoulder belt design due to the state of science and technology at

the time of the Protegé's manufacture.

### 5.    Preemption

Mazda maintains that its fourteenth affirmative defense of preemption based

on *Geier* is proper.  While, for the reasons explained above, Mazda is not entitled

---

[2] Mazda would not be able to offer feasibility evidence if it cannot be disputed that the proffered alternative design was actually being utilized by other manufacturers at the time of the Protegé's manufacture.  If a particular design was actually being used at the time of the Protegé's manufacture, then, by definition, the alternative design was feasible.  Whether this design was actually safer is a different question.  But, for instance, if Speaks' expert's opinion is premised on an historical anachronism, Mazda would be allowed to correct this through the presentation of rebuttal evidence.

to summary judgment on the ground that Speaks' claim is preempted, the Court also concludes that, properly applying the summary judgment standard, Speaks is not entitled to summary judgment on Mazda's affirmative defense of preemption. This issue is addressed in significant detail above, so only a brief analysis is necessary here.

Under *Geier* and its progeny, Speaks' theory of design defect is preempted if it is premised on eliminating a passive restraint system design option that was specifically made available to Mazda under Federal law. *Geier*, 529 U.S. 861, 881; *Griffith v. General Motors Corp.*, 303 F.3d 1276, 1282 (11th cir. 2002); *Hurley v. Motor Coach Indus.*, 222 F.3d 377, 383 (7th Cir. 2000); *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998). Though not statutorily described, preemption is a valid affirmative defense in this strict products liability case.

Without belaboring all of the details, suffice it to say that viewing all of the evidence in the light most favorable to Mazda there is some evidence in the record suggesting that Speaks' theory of design defect wades into a preempted zone by contending that the two-point automatic shoulder belt with manual lap belt design is inherently defective. To the extent that Speaks' presentation of evidence at trial wades into this preempted zone, Mazda is entitled to assert its affirmative defense

-29-

that such a claim or theory is preempted under *Geier*.  Summary judgment on

Mazda's affirmative defense of preemption is therefore denied.

IT IS ORDERED that:

(1)   Mazda's motion to exclude Syson (Doc. 94) is DENIED.

(2)   Mazda's motion to exclude Hoffman (Doc. 91) is DENIED.

(3)   Mazda's motion for summary judgment (Doc. 96) is DENIED.

(4)   Speaks' motion for partial summary judgment is GRANTED IN

PART AND DENIED IN PART consistent with this opinion.

Mazda's affirmative defenses numbers 1, 3, 4, 5, 6, 10, 11, and 12 are

STRICKEN.

DATED this 7th day of August 2015.

Dana L. Christensen, Chief Judge
United States District Court