IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| INCARNACION L. SPEAKS, | CV 14–25–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| MAZDA MOTOR CORPORATION, MAZDA MOTOR OF AMERICA, INC., d/b/a MAZDA NORTH AMERICAN OPERATIONS, | |
| Defendants. | |

Before the Court are the parties' combined motions in limine. For the reasons briefly explained, the Court grants in part, denies in part, and reserves ruling in part.

**Legal Standard**

Motions in limine are procedural devices to obtain an early and preliminary ruling on the admissibility of evidence. *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. 2010). A motion in limine should not be used to resolve factual disputes or weigh evidence. *Id.* Evidence shall be excluded in limine only when it is shown that the evidence is "inadmissible on all potential grounds." *Id.* "Unless evidence meets this high

-1-

standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* "This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* Rulings on motions in limine are provisional and "the trial judge may always change his mind during the course of trial." *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000).

## Discussion

Many of the parties motions have been significantly informed by the Court's August 7, 2015 Order ("Previous Order"). The Court's discussion of its rulings on the parties' motions in limine is accordingly curtailed.

### A.    Plaintiff's Motions in Limine

1.    Plaintiff's Motions in Limine Numbers 1-3 are all concerned with excluding evidence of contributory negligence or superseding or intervening cause. Consistent with the Court's Previous Order, these motions are GRANTED.

2.    Plaintiff's Motion in Limine Number 4 seeks to exclude evidence that Plaintiff's actions caused her injuries. Plaintiff's Motion in Limine Number 7 seeks to exclude evidence of under-the-arm shoulder belt routing. Consistent with the Court's Previous Order, Mazda is entitled to assert a causation defense based

on under-the-shoulder belt routing to the extent that Plaintiff's design defect claim is based on the defective "fit" of the seatbelt even when properly worn. Accordingly, Plaintiff's Motions in Limine Numbers 4 and 7 are DENIED.

3.      Plaintiff's Motions in Limine Numbers 5, 6, and 8 seek to exclude assumption of the risk and misuse evidence.  Consistent with the Court's Previous Order, these motions are GRANTED.

4.      Plaintiff's Motions in Limine Numbers 9 and 10 seek to exclude evidence of whether Plaintiff's husband was wearing his seatbelt at the time of the collision.  Defendants contend the evidence is relevant for impeachment purposes. The Court concludes that this evidence has very little, if any, relevance, even for impeachment purposes.  Whatever minimal relevance it may have is substantially outweighed by the dangers listed in Rule 403 of the Federal Rules of Evidence. Accordingly, these motions are GRANTED.

5.      Plaintiff's Motion in Limine Number 11 concerns evidence that Mazda warned of under-the-arm seatbelt use.  Because Plaintiff has dismissed her negligence claim, this evidence is irrelevant.  The motion is GRANTED.

6.      Plaintiff's Motion in Limine Number 12 seeks to exclude evidence of various federal acts and standards.  Consistent with the Court's Previous Order, the motion is GRANTED.  This ruling should not be interpreted to sweep so broad

as to exclude all evidence of testing because testimony about testing might reference the existence of the National Highway Traffic Safety Administration.

7.     Plaintiff's Motion in Limine Number 13 seeks to preclude evidence that the subject vehicle was manufactured in compliance with applicable regulations, etc.  Consistent with the Court's Previous Order, this motion is GRANTED.

8.     Plaintiff's Motion in Limine Number 14 seeks to preclude any evidence or testimony that would support a preemption defense.  Consistent with the Court's Previous Order, the motion is DENIED.

9.     Plaintiff's Motion in Limine Number 16 seeks to exclude evidence that the federal government encouraged introduction of the passive seatbelt systems along with national seatbelt use campaigns.  Consistent with the Court's Previous Order, the motion is GRANTED.

10.     Plaintiff's Motion in Limine Number 17 seeks to exclude evidence that Mr. Masanao Motonami received an award from Toyota Motor Corporation for his passive seatbelt design.  The evidence is irrelevant and the motion is therefore GRANTED.

11.     Plaintiff's Motion in Limine Number 18 seeks to exclude evidence of states' implementation of mandatory seatbelt use law.   The evidence is irrelevant

and the motion is therefore GRANTED.

12.    Plaintiff's Motion in Limine Number 21 seeks to preclude evidence or argument that with the increasing population of seatbelt users airbags became possible.  The evidence is irrelevant and the motion is therefore GRANTED.

13.    Plaintiff's Motion in Limine Number 22 seeks to preclude evidence that the passive motorized shoulder belt design has demonstrated an increase in belt use rates and corresponding reduction in fatalities.  The evidence is irrelevant and the motion is therefore GRANTED.

14.    Plaintiff's Motion in Limine Number 23 seeks to preclude evidence that the subject vehicle's seatbelt design conformed with the state of the art. Consistent with the Court's Previous Order, the motion is GRANTED.

15.    Plaintiff's Motion in Limine Number 24 seeks to preclude evidence that a review of all passenger car FMSVV 208 and NCAP data for vehicles with passive seatbelt design systems indicates that the subject vehicle's passive restraint system design is consistent with other vehicles. The Court views this motion as seeking to preclude "middle of the pack" type evidence–that Mazda's seatbelt design is similar to all other manufacturer's design, and therefore safe enough.  The Court agrees with Plaintiff that such evidence is inadmissible.   The motion is GRANTED.

16.     Plaintiff's Motion in Limine Number 25 seeks to preclude evidence that a review of all passenger car FMVSS 208 and NCAP test data for vehicles with passive seatbelt systems shows there is no correlation between measured injury criteria and knee-to-bolster distance.  The Court agrees with Mazda that such evidence constitutes proper rebuttal of Syson's opinions related to knee-to-bolster distance.  The motion is DENIED.

17.     Plaintiff's Motion in Limine Number 27 seeks to preclude evidence that a review of crash test data for vehicles with passive shoulder belts indicates that injury levels were low enough to pass FMVSS 208 "injury requirements."  Consistent with the Court's Previous Order, the motion is GRANTED.

18.     Plaintiff's Motion in Limine Number 28 seeks to preclude evidence of a comparison of FMVSS 208 and NCAP Crash Tests for vehicles with passive shoulder belts, including some with manual lap belts, to argue that the Mazda Protegè's passive shoulder belt is very good at protecting occupants in frontal crashes.  For the reasons explained with respect to Motion in Limine Number 24, the Court agrees with Plaintiff that such "middle of the pack" evidence is inadmissible.  The motion is GRANTED.[1]

_____

[1]  The Court's ruling on Plaintiff's Motions in Limine Numbers 24 and 28 is meant to exclude only middle of the pack type comparison evidence.  To the extent that Plaintiff attempts to show that there was a safer alternative design, Defendant may rebut this by comparing the

19.     Plaintiff's Motion in Limine Number 33 seeks to preclude evidence concerning spoliation of evidence.  While the Court denies Mazda's request for a sanction with respect to this issue, evidence that the subject vehicle's condition was altered at some point after the collision will be admissible to the extent it is relevant to the experts' testimony.  The motion is DENIED.

20.     Defendants do not object to Plaintiff's Motions in Limine Numbers 15, 19, 20, 26, 29, 30, 31, 32, and 34.  These motions are therefore GRANTED, subject to the door being opened as to these subjects.

**B.     Mazda's Motions in Limine**

1.     Mazda's Motion in Limine Number 1 seeks to preclude evidence of other claims or incidents.  Despite Mazda's repeated discovery requests for disclosure of substantially similar other incidents evidence, Plaintiff never identified any.  Accordingly, the motion is GRANTED.

2.     Mazda's Motion in Limine Number 2 seeks to preclude evidence of other vehicle manufacturers' documents.  The reasonableness, or lack thereof, of Mazda's behavior is irrelevant in this strict liability case.  Therefore, what Mazda knew about its seatbelt design is also irrelevant.  The Court therefore agrees with Mazda that to the extent that Plaintiff wants to use other manufacturers'

_____

Mazda Protegè's safety performance to that of the proffered alternative design.

documents in order to show what Mazda knew about the safety, or lack thereof, of its product, the documents are properly excluded.  However, it is not clear at this preliminary stage how such documents might be used at trial.  The Court RESERVES RULING on this topic so that it can address it in its proper context.

3.     Mazda's Motion in Limine Number 3 seeks to preclude reference to Ford Motor Company's interest in Mazda Motor Corporation.  Mazda asserts that such references would be intended to impute Ford's knowledge about seatbelt design to Mazda.  Again, Mazda's, and Ford's, *knowledge* about the Protegè's seatbelt design is irrelevant in this strict liability case.[2]  The motion is GRANTED.

4.     Mazda's Motion in Limine Number 4 seeks a sanction against Plaintiff for spoliation of evidence.  Mazda admits that its investigator viewed and photographed the subject vehicle prior to its alteration.  Mazda provides no reason to conclude that it was prejudiced by the damage to the exterior of the vehicle. Mazda spends pages arguing vigorously that a sanction is warranted because "critical" apple pie crumb evidence was lost that may have potentially, if it existed, provided impeachment evidence for Ms. Speaks' conflicting testimony

---

[2]  If Ford's or other manufacturer's documents suggest that a substantially similar seatbelt design is defective, these documents are likely admissible to prove defect.  The Court's ruling on Mazda's Motion in Limine Number 3 is intended to preclude evidence for proving Mazda's knowledge, which would only be relevant to a negligence or punitive damages claim.

about whether her children accepted apple pies that she offered them before the collision.  Mazda speculates that further inspection of the interior of the vehicle could have revealed "[w]hat was generally going on at the moment of impact." (Doc. 116 at 28.)  Mazda also suggests that it could have discovered "[w]hat beverages were spilled during the car accident," but provides no reason as to why this could be important.  Contrary to Mazda's contentions, photos of the back seat suggest that the most that could have possibly been lost were some apple pie crumbs, which, if they could be found and identified, would ultimately amount to weak and cumulative impeachment evidence.  Importantly, no information is provided about where, when, how, by whom, or why the interior of the subject vehicle was cleaned.  Regarding the damage to the exterior of the vehicle, which was allegedly caused by Ms. Speaks' ex-husband, he is a non-party to this action, and the Court will not impute his actions to Plaintiff for purposes of this motion. The Court concludes that the circumstances presented do not mandate a sanction. The motion is DENIED.

5.     Mazda's Motion in Limine Number 5 seeks to preclude Speaks from accusing Mazda for failing to properly test the Mazda Protegè's restraint system and/or for improperly discarding testing results.  The Court agrees with Mazda that such evidence is irrelevant and properly excluded.  While Plaintiff may

impeach Mazda's experts' testimony by contending that it does not rely on testing of 5th percentile female dummies, the reasonableness of Mazda's behavior is irrelevant in this case.  Accordingly, the motion is GRANTED IN PART AND DENIED IN PART.

6.     Mazda's Motion in Limine Number 6 seeks to preclude the testimony of Steven Syson.  The Court has already denied this motion in its Previous Order.  To the extent that Syson attempts to offer objectionable testimony at trial, Mazda must object.  The motion is DENIED.

7.     Mazda's Motion in Limine Number 7 seeks to preclude the testimony of Michelle Hoffman.  The Court has already denied this motion in its Previous Order.  To the extent that Hoffman attempts to offer objectionable testimony at trial, Mazda must object.  The motion is DENIED.

8.     Mazda's Motion in Limine Number 8 seeks to preclude Plaintiff's experts from offering ultimate conclusions of law or legal opinions.  The Court agrees with Mazda that the experts may not offer ultimate conclusions of law or legal opinions.  The Court agrees with Speaks that if proper foundation is laid, the experts in this technical design defect case may offer opinions on mixed questions of law and fact.  The Court will RESERVE RULING on this motion so that it may be addressed in the proper context.

9.     Mazda's Motion in Limine Number 9 seeks an order in limine precluding Plaintiff's counsel "from making improper or inflammatory comments during trial."  (Doc. 116 at 34.)  The Court starts with the assumption that the parties are represented by excellent, experienced, and professional counsel that will behave at trial consistent with their experience and reputation.  To the extent that any party's counsel misbehaves or attempts to offer inflammatory comments, the opposing party must object, and the Court will rule on the specific objection. The motion is DENIED.

IT IS ORDERED that the parties' motions in limine (Docs. 113 and 115) are GRANTED IN PART AND DENIED IN PART consistent with this Order.

DATED this 19th day of August 2015.

Dana L. Christensen, Chief District Judge
United States District Court