FILED

APR 30 2018

Clerk, U.S Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| INCARNACION L. SPEAKS,<br><br>Plaintiff,<br><br>vs.<br><br>MAZDA MOTOR CORPORATION, and MAZDA MOTOR OF AMERICA, INC., d/b/a MAZDA NORTH AMERICA OPERATIONS,<br><br>Defendants. | CV 14-25-M-DWM<br><br>ORDER |

Four motions are pending in this matter: (1) Plaintiff Incarnacion Speaks' ("Speaks") renewed motions in limine, (Doc. 232); (2) Defendant Mazda Motor Corporation and its related entities' ("Mazda") second motion for summary judgment, (Doc. 235); (3) Mazda's motion to exclude the testimony of Stephen R. Syson, (Doc. 240); and (4) Mazda's motion in limine regarding evidence of a seatbelt warning, (Doc. 242). They are addressed in turn.

1

## I. Speaks' Renewed Motions in Limine (Doc. 232)

Speaks renews two motions in limine that were raised prior to the first trial:

4. Mazda should be precluded from introducing any evidence, testimony, argument or improper reference that any damages to [Speaks] resulted from and were caused by [Speaks'] acts, fault, conduct and negligence.

7. Mazda should be precluded from introducing any evidence, testimony, argument or improper reference that had [Speaks] worn her shoulder belt properly and been properly positioned at the time of the crash she would have received minor injuries in the crash.

(Doc. 232 at 2; *see* Doc. 113.) Motion No. 4 is granted and Motion No. 7 is granted in part and modified as outlined below.

Prior to the first trial, Judge Christensen denied Speaks' motions, holding that "Mazda is entitled to assert a causation defense based on under-the-shoulder belt routing to the extent that [Speaks'] design defect claim is based on the defective 'fit' of the seatbelt even when properly worn." (Doc. 126 at 2-3.) Speaks argues that those denials cannot stand in light of the Ninth Circuit memorandum disposition in this case. *See Speaks v. Mazda Motor Corp.*, 701 Fed. App'x 663 (9th Cir. July 26, 2017). Mazda, on the other hand, insists that it has the right to introduce the facts of the crash to show causation. (Doc. 248 at 2.) The Ninth Circuit held that the district court erred by allowing Mazda to introduce considerable evidence of Speaks' misuse but failing to instruct that jury that reasonable misuse is not a defense and not allowing Speaks to present

2

foreseeability-related evidence. *Speaks*, 701 Fed. App'x at 665-66. But, the Circuit clarified: "because Mazda was entitled to introduce evidence to try to defeat the causation element of Speaks' case, we do not hold that the district court improperly admitted Mazda's misuse evidence." *Id.* at 665 n.1.

Speaks can argue that the "fit" of the seatbelt was defective when worn over the shoulder. Accordingly, Mazda, as recognized by Speaks, can argue that the shoulder belt was routed under Speaks' arm during the accident to undercut the causation part of this "fit" argument. (*See* Doc. 252 at 5; Doc. 125 at 23.) But, Speaks can also argue that if the seatbelt was routed under the arm, because that misuse was foreseeable, (*see* Doc. 125 at 21-22), Mazda had a duty to design out or guard against defects related to such use. *Lutz v. Nat'l Crane Corp.*, 884 P.2d 455, 460 (Mont. 1994). Mazda cannot argue, as it did at the first trial, that it is not liable simply because the seat belt was routed under the arm.

Accordingly, Motion No. 4 is **GRANTED** and Mazda is precluded from introducing any evidence, testimony, argument or improper reference that any damages to Speaks resulted from and were caused by Speaks' acts, fault, conduct or negligence. Motion No. 7 is also **GRANTED in PART and MODIFIED** as follows: while Mazda may not characterize Speaks' use as "proper" or "improper," the parties may present evidence and argue as to the factual question of the location of the seat belt and the injuries caused by such placement. Mazda may not

3

use language— such as "correct," "incorrect," "right," "wrong"—that injects fault into this strict liability action.

## II. Mazda's Second Motion for Summary Judgment (Doc. 235)

Mazda seeks summary judgment on two grounds:

1. [Speaks] cannot prove the causation element of her strict products liability seatbelt "fit" theory because the testimony of her biomechanical expert, Michelle Hoffman, is inadmissible on this issue based on her admissions at the first trial; and

2. [Speaks] lacks evidentiary support sufficient to create a genuine issue of material fact that Mazda failed to design-out or guard against wearing the shoulder belt under the arm, which Mazda understands is [Speaks'] new alternate theory of liability.

(Doc. 235 at 2.) Mazda's motion is denied.

Mazda first argues that Speaks cannot support her "fit" theory because her biomechanical expert, Michelle Hoffman, fails to demonstrate an adequate nexus between the placement of the belt and the nature of Speaks' injuries. Mazda's argument has already been rejected in the context of its motion to exclude Hoffman's testimony. (*See* Order, Doc. 259 at 8-9.) There remains a genuine dispute as to how Speaks was wearing the belt and Mazda can cross-examine Hoffman as to the validity of her conclusions by challenging her assumption as to where the belt was placed. (*Id.*) Mazda's motion is denied on this point.

Mazda further argues that because Speaks presents no evidence as to whether Mazda failed to design out or guard against the reasonably foreseeable

4

hazards of wearing a shoulder belt under the arm, summary judgment is appropriate as to this alternative claim. Mazda recognizes that when misuse is reasonably foreseeable to the manufacturer, Montana imposes a duty to design out or guard against. (Doc. 236 at 10 (citing *Lutz*, 884 P.2d at 460).) The record contains sufficient evidence to prevent summary adjudication of this claim in favor of Mazda. There is no factual disagreement that seatbelts are often worn under the arm and that doing so can result in serious injury. (*See, e.g.*, Protégé Owner Manual, Doc. 233-2 ("An improperly worn shoulder belt can be dangerous. In a collision, a shoulder belt worn under the arm will transfer the full force of impact to the ribs and cause serious injury."); Doc. 233-4 (excerpts of trial transcripts showing that Mazda presented substantial evidence at the first trial that the belt being routed under Speaks' arm caused her serious injuries).) Clearly then, Mazda "does not have the benefit of a defense which exonerates or mitigates its breach of duty and its wrongful conduct in failing to design out or guard against the defect." *Lutz*, 884 P.2d at 460. Mazda's motion for summary judgment is **DENIED**.

### III. Mazda's Second Motion to Exclude Syson Testimony (Doc. 240)

Mazda seeks to exclude any new opinions from Speaks' expert "Stephen Syson regarding designing-out or guarding against potential hazards associated with routing the shoulder belt under the arm." (Doc. 240.) Speaks states that she

5

"has no intention of eliciting any such opinions from" him. (Doc. 247.) Mazda's motion to limit the scope of Syson's testimony is **GRANTED**.

## IV. Mazda's Motion in Limine re Seatbelt Warning (Doc. 242)

Finally, Mazda asks that if Speaks is allowed to pursue a "guard against and design out" theory, Mazda be allowed to introduce evidence of its warnings regarding the seatbelt use. Mazda further requests its expert Mike Klima be allowed to offer expert testimony as to the adequacy of the warning. Prior to the first trial, Speaks moved in limine to exclude the shoulder belt usage warning from the Protégé Owner's Manual because she did not allege a failure to warn. (*See* Doc. 114 at 17.) Judge Christensen granted Speaks' motion and excluded the evidence as irrelevant. (Doc. 126 at 3.) Warnings were not raised at the first trial, and Speaks reasserts she does not intend to pursue failure to warn. (Doc. 249 at 5.)

Speaks relies on the "law of the case" to argue that because Mazda did not appeal Judge Christensen's order excluding the warning evidence, it remains final and binding. (Doc. 249 at 2-3.) But Speaks recognizes that a previously decided issue can be revisited if the evidence on remand is substantially different. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). Moreover, the Ninth Circuit has recognized additional reasons may exist to deviate from the "law of the case," including "other changed circumstances" or where "a

manifest injustice would otherwise result." *United States v. Alexander*, 106 F.3d 874, 877 (9th Cir. 1997). It is appropriate to reconsider this issue on remand.

In support of its motion, Mazda cites to the "design" or "safety" hierarchy affiliated with product design engineers. (Doc. 243 at 4.) "This process includes three steps: 1) eliminate hazards if possible without unduly compromising the function or utility of the product, 2) provide some form of physical protection or guarding from remaining hazards, and 3) provide warning and instructions, which can be practically be [sic] followed, for avoiding hazards." (*Id.*) Mazda insists that it responded to the danger posed by a seatbelt worn under the arm with a warning and that this was the "appropriate response because there are no practical or feasible ways to design out or guard against an occupant that decides to move the shoulder belt off their shoulder and place it under their arm." (*Id.* at 7.) And that is what Mazda may argue at trial. *See Lutz*, 884 P.2d at 460.

Moreover, Speaks herself actually attached and cited to the Protégé User Manual warning regarding seatbelts in support of her renewed motions in limine. (*See* Doc. 233 at 2; Doc. 233-2.) And, that warning played a dispositive role in Judge Christensen's determination that not only was the misuse foreseeable, (Doc. 125 at 21-22), but that Mazda also knew of the injuries associated with that misuse.

7

Mazda's motion in limine to allow the presentation of warning evidence is **GRANTED**. But, Mr. Klima's testimony is limited to those opinions fairly disclosed in his November 19, 2014 and December 19, 2014 reports.

**IT IS SO ORDERED.**

DATED this 30th day of April, 2018.

Donald W. Molloy, District Judge
United States District Court