

FILED

MAY 10 2018

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| INCARNACION L. SPEAKS,<br><br>Plaintiff,<br><br>vs.<br><br>MAZDA MOTOR CORPORATION, and MAZDA MOTOR OF AMERICA, INC., d/b/a MAZDA NORTH AMERICA OPERATIONS,<br><br>Defendants. | CV 14-25-M-DWM<br><br>ORDER |

For what seemingly should be a simple case, the odyssey of this litigation past and future, has become increasingly complex. Much of the complexity is due to the pleadings, or lack of them, as they relate to Montana Product Liability Law; some complexity arises because of strategic and tactical maneuvers by one or the other parties. The lack of diligence as it relates to disclosing expert opinions before the last trial and after appeal reflect not only practical problems but also adds to making a simple case complex. A footnote in the Ninth Circuit Memorandum Disposition, n.1, suggests that certain evidence may be admissible in the retrial of the case when the proof suggested is what caused the verdict to be reversed in the

first instance. Here is the problem: we are asking seven lay people to decide if the design of the Mazda seat restraint system is defective. Montana law puts the question of misuse and/or negligence by the plaintiff off limits as it does with the defense of "safe as used", a species of misuse. Yet, the defense of "causation" still seems to be viable under the Ninth Circuit disposition. The confusion for the jury will be trying to sort out whether the design of the seat belt is defective because of "fit" while ignoring the plaintiff's conduct in positioning the seatbelt in question, or in how her body was positioned which ostensibly goes to the question of "fit". In reality such proof raises defenses that are not viable under Montana law, the plaintiff's misuse, negligence or failure to use the belt as intended so it would be safe as used. There is a very narrow line of evidence, proof and argument that fits the interstice of Montana law that does not conflate defect and cause regarding the design of the Mazda seat belt system.

A final pretrial conference was held in this matter on May 3, 2018. (*See* Min. Entry, Doc. 282.) At that conference, the Court and parties discussed this Court's previous ruling regarding misuse evidence, (*see* Doc. 125), and the Ninth Circuit's memorandum disposition, (Doc. 207). Based on that discussion and further review of Montana law on products liability, IT IS ORDERED that the law as described below will govern trial in this matter:

2

In order to recover on her claim, Plaintiff Incarnacion Speaks ("Speaks") must prove: (1) at the time of sale, the 1994 Mazda Protégé's front passenger restraint system was in a defective condition because of its design and (2) that design caused Speaks' injuries. *See* MPI2d 7.02 (2003). Speaks is arguing design defect on two fronts: first, that the "fit" of the belt improperly loads the body[1] and second, that Mazda failed to design out or guard against dangers associated with routing the belt under the arm. Mazda, on the other hand, is arguing that the design of its front passenger restraint system is not defective because: (1) it properly loads the body ("fit") and (2) Mazda designed out and guarded against foreseeable misuse, such as routing the belt under the arm. Mazda further argues, however, that even if the design of the "fit" is defective, the "fit" did not cause Speaks' injuries, her body position did. It is this final point that causes consternation. Because misuse is not a defense in the case, Mazda cannot argue that the front passenger restraint system is not defective because of how Speaks wore it. To do so would be to improperly interject negligence and fault into this strict liability action.

In *Kenser v. Premium Nail Concepts, Inc.*, the Montana Supreme Court addressed a products liability claim against a company that repackaged and

---

[1] Speaks' "fit" argument is two-pronged, alleging both that the design failed to perform as safely as an ordinary consumer would have expected and a safer alternative design should have been used.

3

distributed a liquid acrylic nail product. 338 P.3d 37, 39 (Mont. 2014). During trial, the nail company presented evidence and testimony that the nail product was "safe as used, when skin contact is avoided." *Id.* at 40. The plaintiff countered that this evidence "impermissibly inject[ed] the concept of 'misuse' to the jury." *Id.* The Court agreed, noting that allowing such evidence "was confusing" and violated the district court's earlier grant of summary judgment in favor of the plaintiff on the affirmative defense of misuse. *Id.* at 43. Similarly, in *Lutz v. National Crane Corp.*, the Court restricted evidence related to causation on the grounds that it would impermissibly "interject negligence concepts into a strict liability setting." 884 P.2d 455, 464 (Mont. 1994). The Court emphasized that "in product liability actions, [a court's] analysis focuses on the *condition* of the product—not the *conduct* of the [parties]." *Id.*

Potential evidence, testimony, or argument about Speaks' body position raises the same concern as that addressed in *Kenser* and *Lutz*. The argument that the design of Mazda's front passenger restraint system is not defective because of how Speaks used it is analogous to the "safe as used" argument proffered in *Kenser* and rejected by the Montana Supreme Court. For this reason, Speaks' body position is not relevant to, nor can it be considered in the jury's determination of, defect. Accordingly, Mazda may only argue or present evidence as to Speaks' body position for the exceedingly narrow purpose of showing that the alleged

4

defective "fit" did not cause Speaks' injuries. But, even if Mazda is successful in that argument, Mazda must then show that it designed out or guarded against defects associated with routing the belt under the arm; and, if Mazda failed to do so, that its failure was not a substantial factor in causing Speaks' injuries.

The following hypotheticals may assist in arriving at a common understanding of the legal framework at trial. If the jury finds:

a. The design of the fit of the seatbelt is defective, Speaks was wearing the belt over her shoulder, and the fit of the belt caused Speaks' injury.

Mazda is liable.

b. The design of the fit of the seatbelt is defective, Speaks had it routed under her arm, and the fit of the belt did not cause Speaks' injury. Mazda did not adequately design out or guard against Speaks' foreseeable use of the belt under her arm and the belt routed under her arm caused her injury.

Mazda is liable.

c. The design of the fit of the seatbelt is defective, Speaks had it routed under her arm, and the fit of the belt did not cause Speaks' injury. Mazda adequately designed out or guarded against Speaks' foreseeable use of the belt under her arm, and the belt routed under her arm caused her injury.

Mazda is not liable.

5

d. The design of the fit of the seatbelt is not defective and Speaks was wearing it over her shoulder and the fit caused her injury.

Mazda is not liable.

e. The design of the fit of the seatbelt is not defective and Speaks was wearing it under her arm. Mazda did not adequately design out or guard against her foreseeable use of the belt under her arm, and the belt routed under her arm caused her injury.

Mazda is liable.

f. The design of the fit of the seatbelt is not defective and Speaks was wearing it under her arm. Mazda adequately designed out or guarded against her foreseeable use of the belt under her arm, and the belt routed under her arm caused her injury.

Mazda is not liable.

This analysis is consistent with the positions presented in the parties' Final Pretrial Order: "Speaks can argue that the 'fit' of the seatbelt was defective when worn over the shoulder. Mazda can argue that the shoulder belt was routed under Speaks' arm during the accident to undercut the causation part of this 'fit' argument." (Doc. 280 at 5.) But, as further noted, "Mazda cannot argue, however, as it did at the first trial, that it is not liable simply because the seat belt was routed under the arm. Mazda had a duty to design out or guard against defects related to

6

such use." (*Id.*) Ultimately, Speaks has the burden to prove both defect and causation. But, as Mazda recognized at the conference, its ability to defend itself in this type of action is severely circumscribed by Montana law.

One possible way to prevent misuse, negligence, and fault associated with Speaks' body position from being improperly interjected into the case would be to bifurcate the issues of defect and cause. *See* Fed. R. Civ. P. 42(b). During the "defect" portion of the trial, evidence and argument as to Speaks' body position would be excluded. Only if the jury returned a verdict finding the design was defective would evidence and argument be presented as to cause, which could then include evidence and testimony as to Speaks' body positioning. Accordingly, IT IS FURTHER ORDERED that the parties must file a notice as to their respective positions on bifurcation by **12:00 p.m. on May 11, 2018**.

IT IS FURTHER ORDERED that warnings are off the table. Speaks is not alleging failure to warn and Mazda cannot rely on its warning as to obviate its duty to design out or guard against defects associated with foreseeable misuse. *Lutz v. National Crane Corp.*, 884 P.2d 456, 459 (Mont. 1994). That said, Speaks may open the door for warnings if she makes such argument as "Mazda did nothing to make the restraint system safer." Any further discussion of the "design hierarchy" will depend on the proof presented at trial subject to the limitations of the expert disclosures in the case.

IT IS FURTHER ORDERED that Exhibits 1045, 1048, 1050, 1052, and 1053—conditionally admitted at the final pretrial conference—are ADMITTED.[2]

IT IS FURTHER ORDERED that given the position of the parties, (Docs. 285, 286), and further scrutiny of the case, the Court will not give its proposed prefatory remark. However, it will be necessary to introduce the jury to the concept of products liability, which will be achieved, at least in part, during Court-conducted voire dire.

DATED this 10th day of May, 2018.

Donald W. Molloy, District Judge
United States District Court

---

[2] These exhibits were admitted with no objection at the first trial. (*See* Trans. 1097–98 (Ex. 1045), 1119–20 (Exs. 1048, 1050, 1052), 1123–24 (Ex. 1053).) Per this Court's previous order, however, Mazda may not present testimony or evidence regarding compliance with applicable federal law and regulations. (*See* Doc. 125 at 24–25.)